United States Bankruptcy Court
Southern District of Texas

**ENTERED**

February 09, 2026

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 25-80418** |
| **ENKB-MONTICELLO LLC,** *et al.*, | § | |
| | § | **CHAPTER 11** |
| Debtors. | § | |
| | § | |
| **RANCH KNOT REALTY LLC,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 25-8010** |
| | § | |
| **FERCAN KALKAN,** *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION GRANTING SUMMARY JUDGMENT (RELATES TO ECF NO. 7)

### BACKGROUND

Effective as of November 8, 2023, BSD Houston LLC (hereinafter "BSD") and Kalkan Capital USA LLC (hereinafter "Kalkan Capital") entered into the Limited Liability Company Agreement of Kalkan Sub Holdco LLC (hereinafter the "Joint Venture Agreement").[1] Effective the same day, BSD and Kalkan Capital Limited (hereinafter "KCL") executed the Amended and Restated Limited Liability Company Agreement of Kalkan Capital USA LLC (hereinafter the "Kalkan Member Agreement" and together with the Joint Venture Agreement, the "Company Agreements").[2]

As consideration for execution of the Company Agreements, BSD agreed to loan approximately $6 million (hereinafter the "Preferred Equity Investment") to Kalkan Capital through a Convertible

---

[1] ECF No. 7, Ex A-1 at 4.
[2] *Id.* at 16.

Promissory Note executed by Dr. Fercan Kalkan (hereinafter "Dr. Kalkan") and Kalkan Capital, which then converted into a Preferred Equity interest in Kalkan Capital and Sub Holdco, whereby BSD became a 10% owner of Kalkan Capital.[3]  Dr. Kalkan and KCL (hereinafter the "Defendants" or "Defendant-Guarantors")  also executed a Guaranty for the benefit of BSD (hereinafter the "Guaranty") agreeing to be jointly and severally liable to BSD for the "Guaranteed Obligations" as defined under that agreement, which included but were not limited to repaying the principal amount of the Preferred Equity Investment plus interest.[4]

Following execution of the Company Agreements and Guaranty, various Material Defaults, as defined under those agreements, occurred.[5]  On August 20, 2024, BSD filed Case No. 2024-54750 in the 189th District Court of Harris County, Texas (hereinafter the "State-Court Litigation") against Dr. Kalkan, Kalkan Capital, and KCL claiming breach of the Company Agreements and the Guaranty.[6] Between the months of September 2024 through January 2025, BSD attempted at various time to cause a transfer of ownership interests in certain Non-Joint Venture Properties[7] to Kalkan Sub Holdco pursuant to its purported rights under the Company Agreements.[8]  On December 12, 2024, BSD sent a written notice to the Defendants notifying them of certain "Non-Joint Venture Conveyances" from Kalkan Capital to Kalkan Sub Holdco, and stating that BSD "ha[d] reasonably determined these additional Non-Joint Venture Conveyances will provide the Company with sufficient value to cause a Redemption in Full[9] with

---

[3] ECF No. 7, Ex. A; Ex. A-4.  At the time of conversion, the principal on the Preferred Equity Investment was $6.062 million.  ECF No. 7, Ex. A-5; Ex. A ¶ 6.

[4] ECF No. 7, Ex. A-3 at 1 §§ 1.1–1.4.

[5] ECF No. 7, at 9–12.

[6] ECF No. 12, Ex. 12.

[7] As defined under the Company Agreements.  *See* ECF No. 7, Ex. A-1.

[8] ECF No. 7, Ex. A-1 at § 8.5.  The issue of whether BSD had authority pursuant to the Joint Venture Agreement to cause the transfer of ownership interests in certain Non-Joint Venture Properties to Kalkan Sub Holdco is still in dispute and has not yet been determined by this Court.  That issue, however, is not before the Court today.

[9] As defined under the Company Agreements and Guaranty.  *See* ECF No. 7, Ex. A-1; Ex. A-2; Ex. A-3.

respect to the July Member's [(BSD's)] Preferred Equity Balance."[10]  In conjunction with those attempted ownership interest transfers, BSD also sought declaratory judgment in the State-Court Litigation to obtain court approval of BSD's purported right to effect transfers of the Non-Joint Venture Properties.[11]

On September 4, 2025, Ranch Knot Realty LLC (hereinafter "RKR") and BSD entered into a Membership Interest Purchase Agreement (hereinafter the "MIPA") in which BSD sold to RKR "(i) all [BSD's] rights, title, and interests in connection with its Preferred Equity Investment and membership interest in Kalkan Sub Holdco LLC and [Kalkan Capital], including all of BSD's rights, remedies, and interests under the Company Agreements; and (ii) all of BSD's rights, title, and interests under the Guaranty."[12]  On the same day, RKR and BSD also executed an Assignment of Guaranty, "under which BSD effectuated its transfer and assignment to RKR all of BSD's rights, title, and interests under the Guaranty."[13]

On September 7, 2025, Dr. Kalkan filed petitions for bankruptcy on behalf of ENKB Monticello LLC, La Plaza 2022 LLC, Mar del Sol 2021 LLC, and Texas Nueva 2021 LLC, and on September 10, 2025, filed another petition for bankruptcy on behalf of Verenda 2021 LLC (collectively the "Debtors").[14]  On September 29, 2025, the Debtors removed the State-Court Litigation to this Court and initiated the above captioned adversary proceeding.[15]

Prior to removal, BSD had filed summary judgment motions in the State-Court Litigation relating to its declaratory judgment claim and breach of Guaranty claim.  The state court denied one motion with respect to BSD's claim for declaratory judgment, but had yet to rule on the other before that case was removed to this Court.

---

[10] ECF No. 12, at 2.

[11] *Id.*

[12] ECF No. 7, Ex. C; Ex. C-1.

[13] ECF No. 7, Ex. C; Ex. C-2.

[14] Case No. 25-08006, ECF No. 1; Case No. 25-80419, ECF No. 1; Case No. 25-80420, ECF No. 1; Case No. 25-80421, ECF No. 1; Case No. 25-80423, ECF No. 1.

[15] ECF No. 1.

On November 18, 2025, RKR (also "Movant") filed the instant Motion for Summary Judgment on RKR's (formerly BSD's) breach of Guaranty claim against the Defendant-Guarantors.[16]  On January 6, 2026, the Court held a Hearing on the Motion for Summary Judgment and took the matter under advisement.

## JURISDICTION

28 U.S.C. § 1334(a) provides the District Courts with jurisdiction over this proceeding.  28 U.S.C. § 157(b)(1) states that "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." This proceeding has been referred to this Court under General Order 2012-6 (May 24, 2012).  This Court has jurisdiction in this proceeding as it is a core proceeding which the Court can consider under 28 U.S.C. §§ 157(b)(2)(A).  The Court has constitutional authority to enter final orders and judgments.  *Stern v. Marshall*, 564 U.S. 462, 486–87, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011).  And venue is proper under 28 U.S.C. §§ 1408 and 1409.

## DISCUSSION

Under FED. R. CIV. P. 56, as incorporated to this adversary proceeding under FED. R. BANKR. P. 7056, a movant is entitled to summary judgment if it demonstrates to the Court "there is no genuine dispute as to any material fact and [the movant] is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).

## I.   THE SUMMARY JUDGMENT EVIDENCE ESTABLISHES EACH ELEMENT OF RKR'S CLAIM FOR BREACH OF THE GUARANTY.

To prevail on its Motion for Summary Judgment against the Defendants, "[RKR] was required to conclusively establish (i) the existence and ownership of the [Guaranty], (ii) [RKR's] performance of

---

[16] ECF No. 7.

the terms of the [Guaranty],[17] (iii) the occurrence of the condition on which liability is based, and (iv) the [Defendants'] failure or refusal to perform the promise." *See Vince Poscente Intern. Inc. v. Compass Bank*, 460 S.W.3d 211, 214 (Tex. App.–Dallas 2015, no pet.). RKR argues it has met this standard, as reflected by the summary judgment evidence, and any purported factual issues the Defendants have raised are not material to RKR's claim for breach of the Guaranty. The Court agrees RKR has satisfied its burden that it is entitled to judgment as a matter of law on its claim for breach of the Guaranty.

## A.   EXISTENCE AND OWNERSHIP OF THE GUARANTY.

The uncontroverted evidence indicates Dr. Kalkan and KCL executed the Guaranty for the benefit of BSD as consideration for BSD's commitment to loan $6.062 million to Kalkan Capital through a Convertible Promissory Note executed by Dr. Kalkan and Kalkan Capital, which was then converted into a Preferred Equity interest in Kalkan Capital and Sub Holdco.[18] Under the Guaranty, Dr. Kalkan and KCL agreed to be jointly and severally liable as primary obligors to BSD for the "Guaranteed Obligations" as defined therein.[19] The Guaranteed Obligations include, in relevant part, the obligation to pay BSD "the full Preferred Equity Balance upon the occurrence of any Material Default, together with any losses, damages, costs and expenses incurred by or on behalf of [BSD] by reason of any Material Default."[20]

The Joint Venture Agreement contains an extensive definitional list of what constitutes a "Material Default" under that agreement, which generally involve such prohibited conduct taken in relation to

---

[17] Under the terms of the Guaranty, RKR has no obligation to perform or render performance for the Defendant-Guarantors. *See generally* ECF No. 7, Ex A-3. Accordingly, this factor need not and will not be considered when evaluating whether RKR has satisfied its burden under Fed. R. Civ. P. 56(a).

[18] ECF No. 7, Ex. A-5; Ex. A, ¶ 6.

[19] ECF No. 7, Ex. A-3 at 1, §§ 1.1–1.4.

[20] *Id.* at § 1.2(ii). The "Preferred Equity Balance," as defined under the Joint Venture Agreement, "comprises 'the sum of (a) the Preferred Equity Investment [i.e., $6.062 million], plus (b) the accrued and unpaid Preferred Return, plus (c) the Unpaid Exit Fee Balance as of such date." ECF No. 7, Ex. A-1 at 7.

Joint Venture Properties "prior to repayment in full of the Preferred Equity Balance."[21]   The Kalkan Member Agreement gives the term "Material Default" the same meaning ascribed to such term in the Joint Venture Agreement, such that the same conditions triggered a Material Default under the Joint Venture Agreement with respect to "real properties that are owned directly or indirectly by [Kalkan Capital], but not directly or indirectly by the Joint Venture."[22]   Any breach of the Kalkan Membership Agreement also constitutes a Material Default.[23]

Under the terms of the Joint Venture Agreement, BSD is entitled to Redemption in Full—defined as "payment in full of the Preferred Equity Balance"—not later than the Mandatory Redemption Date, which includes the date of "the occurrence of any Material Default."[24] Such terms as laid out in the Joint Venture Agreement are incorporated by and made applicable to the Kalkan Member Agreement.[25]

Under the Joint Venture Agreement, "upon the occurrence of a Material Default, [BSD] shall have the right to exercise its applicable rights under the Guaranty."[26]   Upon a Material Default under the Joint Venture Agreement, "[f]or purposes of [calculating the Preferred Equity Balance], the applicable Preferred Equity Rate shall be the Increased Preferred Return Rate," which is "twenty-one percent (21%) per annum compounded weekly."[27]   Under the Guaranty, Dr. Kalkan and KCL also agreed that upon a failure to make timely payment on all or any part of the Guaranteed Obligations, Dr. Kalkan and/or KCL "shall, within ten (10) Business Days of demand . . . pay in [USD] the amounts due on the Guaranteed Obligations," along with "all reasonable out-of-pocket costs and expenses (including court costs and attorneys' fees) incurred by

---

[21] ECF No. 7, Ex. A-1 at 4–5 parts (a), (b), (e)–(i), (k), 3.
[22] ECF No. 7, Ex. A-2 at §§ 1.34, 1.35, Sched. B; *see also* Ex. A-6 at 2; Ex. A ¶ 7.
[23] *Id.*
[24] ECF No. 7, Ex. A-1 at 4, 7.
[25] ECF No. 7, Ex. A-2 at § 9.3.
[26] ECF No. 7, Ex. A-1 at § 10.2(b)(4).
[27] *Id.* at § 10.2(a)(1).

[BSD] in the enforcement hereof . . . ."[28] The Kalkan Membership Agreement, which addresses "Material Default[s] . . . with Respect to Non-Joint Venture Projects," incorporates the same remedies set out in the Joint Venture Agreement.[29]

The Court, upon review of the terms of Company Agreements and Guaranty, finds RKR's simplified description of those contracts apt:

> [U]pon a Material Default under either of the Company Agreements, the Guaranty requires [Dr.] Kalkan and/or KCL, within ten days of demand, to pay the full Preferred Equity Balance (i.e., the Preferred Equity Investment, plus the accrued and unpaid Preferred Return), plus all [] costs, expenses, and attorneys' fees incurred by BSD.[30]

Under the terms of the MIPA and Assignment of Guaranty, RKR is the current owner of the Guaranty, and any rights, title, and interests thereunder or as described in the preceding paragraphs of this Opinion are owned by and apply to RKR.

## B.   OCCURRENCE OF THE CONDITION ON WHICH LIABILITY IS BASED.

RKR's Motion for Summary Judgment describes at length a non-exhaustive list of Material Defaults that have occurred under the Company Agreements.[31]   Upon review of the terms of the Company Agreements and the analogous definitions of "Material Default"

---

[28] ECF No. 7, Ex. A-3 at §§ 1.3, 1.4, 1.6
[29] ECF No. 7, Ex. A-2, at § 7.3.
[30] ECF No. 7, at 9.
[31] ECF No. 7, at 9–11.  Such Material Defaults by category include (i) the occurrence of at least 13 Bankruptcy-related actions by Dr. Kalkan since January 2025, (ii) the failure of Kalkan Capital to pay BSD Mandatory Monthly Distributions as required by the Joint Venture Agreement since September, 2024, (iii) the execution of various Deeds of Trust by Dr. Kalkan and the Fee Owners of various Joint Venture and Non-Joint Venture Properties, pledging interests in such properties to unauthorized entities without the consent of BSD, (iv) various defaults under, demands for payment, and/or accelerations of outstanding balances due on loans with certain lenders for mortgage loans on various Joint Venture Properties, and (v) the filing of various UCC financing statements on certain Joint Venture and Non-Joint Venture Properties.  *Id.*

thereunder, the Court agrees various Material Defaults under those agreements have occurred. Tellingly, Dr. Kalkan and KCL have conceded the occurrence and existence of these Material Defaults and have expressly admitted they are "currently liable" under the Guaranty.[32] Accordingly, RKR has readily demonstrated the occurrence of the condition on which liability under the Guaranty is based.

## C.   THE DEFENDANTS' FAILURE OR REFUSAL TO PERFORM THE PROMISE.

RKR introduced evidence that on June 26, 2024, after learning of various Material Defaults under the Company Agreements, BSD sent a written notice and demand to the Defendants identifying such various Material Defaults and demanding all amounts owed under the Guaranty.[33] According to RKR, neither Dr. Kalkan nor KCL ever responded to the June 26 notice. The Defendants did not introduce evidence otherwise.

RKR also introduced evidence that on September 20, 2024, BSD sent another letter to the Defendants providing notice of additional Material Defaults under the Company Agreements and demanding payment of the Preferred Equity Balance under the Guaranty.[34] According to RKR, neither Dr. Kalkan nor KCL responded to the September 20 notice, and the Defendants did not introduce any countervailing evidence.

RKR has submitted that to date, neither Dr. Kalkan nor KCL have performed their obligations under the Guaranty.[35] In a colloquy at trial, Dr. Kalkan made an ambiguous reference to payments the Defendants had been making on a loan. "[U]nsubstantiated assertions are not competent summary judgment evidence." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). While the Defendants did not introduce into evidence payments they may have made under the

---

[32] ECF No. 7, Ex. B-7 at 4; Ex. B-8 at 3.
[33] ECF No. 7, Ex. A-12.
[34] ECF No. 7, Ex. A-14.
[35] ECF No. 7, Ex. A at ¶ 16.

Guaranty, Dr. Kalkan's unsworn statements appear to reference various payments on interest totaling $357,481.88.[36]  These payments certainly do not cover the amount owed on the Principal Equity investment, nor the outstanding Preferred Equity Balance as calculated by RKR.[37]  Nor did the Court find Dr. Kalkan's reference or explanation of unsubstantiated payments helpful as to whether the standard under FED. R. CIV. P. 56(a) was satisfied.  Accordingly, the Court concludes RKR has established the Defendants' failure or refusal to perform under the Guaranty.

## II.   THE DEFENDANTS FAILED TO RAISE AN ISSUE OF MATERIAL FACT.

"Once the movant establishes its right to summary judgment as a matter of law, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact, thereby precluding summary judgment."  *See Vince Poscente Intern., Inc.* 460 S.W.3d at 214 (citing *Kyle v. Countrywide Home Loans, Inc.*, 232 S.W.3d 355, 358 (Tex.App.– Dallas 2007, pet. denied)).  "In deciding whether there is a disputed material fact precluding summary judgment, evidence favorable to the non-movant will be taken as true. [] Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor."  *Nixon v. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548–49 (1985).

The Defendants argue four purported genuine issues of material fact exist as to RKR's breach of Guaranty claim: (i) whether Dr. Kalkan signed the Company Agreements on behalf of himself and on behalf of KCL, (ii) whether a prior state-court TRO prevented the Defendants from being able to enter into the Company Agreements, and (iii) whether RKR is currently entitled to the amount it claims under the Guaranty, and (iv) whether the law of the case doctrine precludes RKR from filing

---

[36] ECF No. 7, Ex. A-17.  RKR states the outstanding Preferred Equity Balance is $7,776,688.90.  *Id.*  This amount reflects the initial Preferred Equity Investment of $6,062,000.00, plus the Preferred Return interest accrued between July 3, 2024, through November 12, 2025 of $1,754,210.35, plus the Unpaid Exit Fee Balance of $121,240.00, minus Upfront Interest Paid of ($85,000), minus the Reserve Balance of ($75,761.45).  *Id.*  RKR took into account the ($357,481,88) in interest paid on the Guaranty when determining the total interest accrued of $1,754,210.35.  *Id.*

[37] *Id.*

the instant Motion for Summary Judgment.[38]   The Defendants, however, have failed to demonstrate that any of these purported factual issues "might affect the outcome of the [breach of Guaranty claim] under the governing law."[39]   *See Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (A material fact is one "that might affect the outcome of the suit under the governing law.")).

First, Defendants appear to conflate the issue of Dr. Kalkan's capacity to enter into the Company Agreements with his capacity to execute the Guaranty.   RKR has conclusively proven the Guaranty exists and was executed with Dr. Kalkan and KCL as Guarantors under that agreement.   The Defendants have conceded liability under the Guaranty and have not raised any issue or introduced any countervailing evidence to suggest Dr. Kalkan did not have the capacity to execute that agreement on behalf of himself or KCL.   Moreover, the Defendants did not introduce any summary judgment evidence as to the merits of their contention that Dr. Kalkan lacked capacity to enter into the Company Agreements, nor how any purported lack-of-capacity related to his liability under the Guaranty.   "A party opposing such a summary judgment motion may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine

---

[38] ECF No. 12.

[39] On January 13, 2026, the Defendants filed a Supplemental Response to Motion for Summary Judgment at ECF No. 21.  None of the exhibits attached to the Supplemental Response are competent summary judgment evidence.  None of the exhibits were authenticated, in violation of FED. R. EVID. 901(a).  Further, the Defendants sought admission of a purported Non-Binding Memorandum of Understanding (hereinafter the "MOU") presumably to dispute the validity or amount of RKR's claim for payment under the Guaranty, which is an impermissible purpose under FED. R. EVID. 408.  Moreover, even if this Court were to consider the unauthenticated and unadmitted evidence attached to the Supplemental Response for purposes of this Motion for Summary Judgment, the outcome would nonetheless remain unchanged.  RKR has demonstrated that it took into account purported payments Dr. Kalkan made on the Guaranty in 2024, as well as purported payments made under the MOU when calculating the outstanding Preferred Equity Balance. ECF No. 7, Ex. A-17.  RKR also admitted evidence which disproves that as of December 21, 2023, $2,750,000 of Remaining Convertible Note Funds was, at least as of that time, not transferred to BSD.  *Id.*; ECF No. 7, Ex. A-18.

issue for trial." *Ragas*, 136 F.3d at 458 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–57 (1986)).  The Defendants have not met this standard.  Regardless, whether Dr. Kalkan possessed such capacity to enter into the Company Agreements would not change the outcome of RKR's breach of Guaranty claim, as Dr. Kalkan's liability has been proven conclusively.  Accordingly, there is no genuine issue of material fact raised here.

Defendants' second argument fails in similar fashion.  The Defendants assert that a "question of fact [exists] . . . as to whether [the Defendants] could enter into the [Company Agreements] . . . based on a prior state court injunction."[40]  The Defendants appear to reference a TRO entered on November 17, 2023 by the 157th District Court of Harris County, Texas.[41]  That effectively prevented the principals of Monticello from "transferring membership interests they may have in ENKB-Monticello LLC or transferring or disposing of any real estate and/or assets valued above $50,000 owned by . . . ENKB-Monticello LLC."[42]  Their assertion that this prior state-court TRO raises an issue as to the Defendants' capacity to enter into the Guaranty is conclusory and remains unsupported by any summary judgment evidence.  As RKR correctly points out, nothing in that state-court TRO would have applied to or prevented Dr. Kalkan, Kalkan Capital, or KCL from entering into the Company Agreements and/or Guaranty.[43]  Moreover, the Company Agreements and Guaranty where each executed on November 8, 2023— "nine days before the [] state court injunction was issued."[44]  The state court TRO necessarily would not have had an effect on the Defendants' ability or capacity to execute those agreements because those agreements predated it.[45]  Therefore, no genuine issue of material fact was raised here either.

Defendants' third argument with respect to amounts owed under the Guaranty at best fails to change the outcome of this case, and at

---

[40] ECF No. 12, at 10.
[41] ECF No. 12, at 8.
[42] *Id.*
[43] ECF No. 16, at 4–5.
[44] ECF No. 16, at 4
[45] *Id.*

worst is confusing and represents a mischaracterization of RKR's rights under the Company Agreements and Guaranty. Nonetheless their argument fails for two reasons.

First, as RKR correctly points out, Defendants did not introduce any competent summary judgment evidence establishing the outstanding Preferred Equity Balance currently owed to RKR was any amount other than the $7,776,688.90 asserted by RKR. Accordingly, the Defendants' assertions with respect to discrepancies in the amount owed under the Guaranty remain conclusory and fail to show the existence of a material fact. *See Ragas*, 136 F.3d at 458.

Second, Defendants mischaracterize prior notices BSD and RKR sent the Defendants as indicating the outstanding Preferred Equity Balance was paid in part or in full prior to the filing of the instant Motion for Summary Judgment. They are wrong.

BSD's December 12, 2024, letter was merely a notice that a sale of those properties would be a Redemption in Full of the outstanding Preferred Equity Balance *had BSD been able to effectuate the sale of those properties* from Kalkan Sub Holdco to its designees. Those sales, however, did not occur. Accordingly, Defendants' assertion that the outstanding Preferred Equity Balance should have been $0 at the time the December 2024 transfer occurred is factually incorrect. Moreover, the ownership transfer from Kalkan Capital to Kalkan Sub Holdco—on its own—did not and would not result in payment to *BSD* on account of outstanding amounts owned to it under the Guaranty.

On September 5, 2025—after execution of the MIPA and Assignment of Guaranty—RKR sent Defendants a letter putting them on notice RKR was seeking to exercise its contractual right and remedy to cause the Debtors to sell their properties to RKR's designees in partial satisfaction of the Preferred Equity Balance.[46] That notice states that upon the consummation of those sales the outstanding Preferred Equity Balance would be reduced to $4,594,535.20.[47] Defendants did not enter any evidence or testify as to whether those sales were ever

---

[46] ECF No. 12, Ex. 19.

[47] *Id.*

consummated.  According to RKR, those sales never went through because on September 7, 2025, Dr. Kalkan filed bankruptcy petitions on behalf of each of the Debtors.  On September 22, 2025, Dr. Kalkan acquired a TRO from this Court which further prevented RKR from going forward with the sales.[48]  RKR's calculation of the outstanding Preferred Equity Balance—reflecting an amount of at least $7,776,688.90—indicates the only payments ever made on the loan totaled $357,481.88.[49]  Defendants reference to the December 12, 2024 and September 5, 2025 letters therefore fails to call into dispute the outstanding Preferred Equity Balance.  Accordingly, the Court must conclude Defendants failed to raise any issue of material fact as to amounts owed under the Guaranty.

The Defendants' fourth and final argument with respect to invocation of the law of the case doctrine is without merit.  "Under the law of the case doctrine, 'when a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages in the same case.'"  *See In re Crescent Trading LLC*, 654 B.R. 246, 252–53 (Bankr. S.D. Tex. 2023) (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)).  RKR previously filed a motion for summary judgment on its breach of Guaranty claim in the State Court Litigation.  Regardless of the outcome of that motion, "this Court now sits as the trial court and may reconsider prior summary judgment denials."  *See id.*, at 253 (citing *Jackson v. Widnall*, 99 F.3d 710, 713 (5th Cir. 1996) ("We need not consider whether the second motion merely restates the first, however, as 'a trial court may reconsider a previously denied motion for summary judgment even in the absence of new evidentiary material.'")).  The State Court Litigation was removed to this Court before the state court ruled on RKR's breach of Guaranty claim.  Accordingly, there is no reason this Court cannot "reconsider" RKR's yet-to-be-ruled-on summary judgment motion, and no basis within the law of the case doctrine for arguing otherwise.  Moreover, "[c]ourts have considerable discretion in controlling their dockets, which 'includes determining whether to allow successive or multiple motions for summary judgment.'"  *See id.* (quoting *Henderson v. Wal-Mart Stores,*

---

[48] ECF No. 12, Ex. 24 at App'x 513–16.
[49] ECF No. 7, Ex. A-17.

*Inc.*, No. 1:14-CV-224, 2015 WL 3901755, at *3 (E.D. Tex. June 23, 2015)).  More to the point, RKR having previously filed a motion for summary judgment in the State Court Litigation does not raise a genuine issue of material fact as to its breach of Guaranty claim today.

### CONCLUSION[50]

Based on the foregoing reasons, the Motion for Summary Judgment is GRANTED.

The Movant will settle a summary judgment order reflecting the ruling contained in this Memorandum Opinion within 14 days from the entry of this Memorandum Opinion.

SIGNED 02/07/2026

Alfredo R Pérez
United States Bankruptcy Judge

---

[50] This Memorandum Opinion constitutes the findings of fact and conclusions of law required by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

14 / 14